The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNIBANK, *et al.*,

    Plaintiffs,

v.

GREAT AMERICAN SECURITY
INSURANCE COMPANY,

    Defendant.

NO. 25-cv-1261-BJR

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

## I.    INTRODUCTION

This lawsuit involves an insurance coverage dispute between Plaintiffs, UniBank and U&I Financial Corp. (collectively, "UniBank"), and Defendant Great American Security Insurance Company ("Great American"). Currently pending before the Court is Great American's Motion to Dismiss Plaintiffs' Second Amended Complaint, Mot., ECF No. 41. Having reviewed the materials[1] and the relevant legal authorities, the Court will grant the motion. The reasoning for the Court's decision follows.

---

[1] Including the motion, ECF No. 41; Plaintiffs' response in opposition, ECF No. 45; and Defendant's reply, ECF No. 47; together with attached declarations and exhibits.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

- 1

## II.    BACKGROUND

Great American insured UniBank under a Directors & Officers Liability Policy, Policy Number DNOE423841, for the period from October 31, 2022 to October 31, 2023 ("the Policy"). Sec. Am. Compl.[2] ¶ 1, ECF No. 38; Policy, Ex. 1, ECF No. 43-1. On October 31, 2023, a lawsuit was filed against UniBank and certain of its individual officers and/or directors ("the *Bowman* Lawsuit"),[3] which was timely tendered to Great American for coverage under the Policy. *Id.* ¶ 4. Additional individuals were added to the *Bowman* Lawsuit in November 2025, and factual allegations were expanded in an amended complaint. *Id.* ¶ 5; *Bowman* Lawsuit Compl., Ex. 2, ECF No. 44-1.

The *Bowman* plaintiffs allege that UniBank provided Small Business Administration loans to finance purchases of carbon capture and utilization units from Clean Energy Technology Association, Inc. ("CETA"), which turned out to be a Ponzi scheme. *Bowman* Lawsuit Compl. 2. A second underlying proceeding was also tendered to Great American for coverage—an administrative action filed by the State of Washington Department of Financial Institutions, Division of Banks ("the Administrative Action"). Sec. Am. Compl. ¶ 10. The Administrative Action involved allegations against former UniBank officers related to their role in arranging loans from UniBank to finance CETA purchases. *Id.* ¶¶ 11-13.

UniBank seeks a declaratory judgment that the Policy provides coverage for the two underlying actions up to the $7 million D&O Policy limit, and that it also provides separate coverage under the Broad Form Company Liability ("BFCL") limit of $3 million, including the costs of defending against the claims asserted in the underlying actions. Sec. Am. Compl. ¶¶ 15-

---

[2] The Second Amended Complaint, ECF No. 38, is the operative complaint.
[3] Referring to *Bowman, et al. v. UniBank, et al.*, Snohomish County Case No. 23-2-07972-31).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

- 2

17. This represents total coverage of $10 million. *Id.* UniBank also asserts a second cause of action for breach of contract, alleging that Great American breached its obligations under the Policy by failing to make the full policy limits available in response to the *Bowman* Lawsuit and the Administrative Action. *Id.* ¶¶ 18-21.

Great American responds that the underlying actions constitute a single claim that arises out of UniBank's "Lending Services" and is subject to the BFCL limit of $3 million. Mot. 2-3. As such, Great American asserts that this case involves a narrow legal dispute, requiring the interpretation of a single provision of an insurance policy, which is appropriate for resolution and dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 8.

### III.   LEGAL STANDARDS

#### A.   Dismissal under Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is properly granted if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). When considering a motion to dismiss under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and construe such allegations in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-87 (9th Cir. 2018).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

- 3

Typically, a court may not consider material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908. The court may consider such documents so long as their authenticity is not contested, and the complaint relies on them.[4] *Id.*, *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

## B.    Principles Governing Insurance Contract Interpretation

Federal Courts sitting pursuant to diversity jurisdiction, as here, apply state substantive law, including the state substantive law regarding insurance policy interpretation. *See Indian Harbor Ins. Co. v. City of Tacoma Dep't of Pub. Utilities*, 354 F. Supp. 3d 1204, 1212 (W.D. Wash. 2018) (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Under Washington law, "[c]onstruction of an insurance policy is a question of law for the courts, the policy is construed as a whole, and the policy 'should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 183 Wn. 2d 485, 489 (2015) (quoting *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn. 2d 50, 65 (1994)).

"In construing the language of an insurance policy," the Court looks to "the entire contract, [which] must be construed together so as to give force and effect to each clause." *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn. 2d 869, 876 (1990). Undefined terms within a policy are to be given their "plain, ordinary, and popular meaning." *Xia v. ProBuilders Splty Ins. Co.*, 188 Wn.2d

---

[4] The Court has considered the Policy and the underlying *Bowman* Lawsuit Complaint.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

- 4

171, 181-82 (2017) (quoting *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn. 2d 618, 627 (1994)).

If an undefined term is ambiguous, it "must be construed against the insurer and in favor of the insured." *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn. 2d 750, 756 (2010). A term is considered ambiguous where "it is susceptible to more than one reasonable interpretation." *Id.*; *see also McLaughlin v. Travelers Com. Ins. Co.*, 196 Wn. 2d 631, 642 (2020). In determining whether ambiguity exists, the Court may look to "context and the intent of parties." *Holden*, 169 Wn. 2d at 756. Where, however, the language of a policy is clear and unambiguous, the Court "must enforce the policy as it is written and may not modify the policy or create ambiguity where none exists." *Mass. Bay Ins. Co. v. Walflor Indus., Inc.*, 383 F. Supp. 3d 1148, 1157 (W.D. Wash. 2019) (citing *Pub. Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins. Co.*, 124 Wn. 2d 789, 797 (1994)).

## IV.   DISCUSSION

### A.   Policy Interpretation

Great American argues that the unequivocal language of the Policy Section VI.A.(5) caps its total liability at $3 million (the BFCL amount) because all UniBank's claims arise out of "Lending Services." Mot. 9. The referenced Policy language states:

> The Insurer's maximum Limit of Liability under this Policy with respect to all Claims arising out of or in any way involving Lending Services shall not exceed the Limit of Liability provided under the Lender Liability Insuring Agreement, Broad Form Lender Liability Insuring Agreement or Broad Form Company Insuring Agreement, whichever is so attached to this Policy, regardless as to whether a shared or separate limit is specified in Item 8. of the Declarations for any Insuring Agreement provided to the Insured under this Policy.

Policy at 47, 1.(5). The Broad Form Company Liability limit is set at $3 million under Item 9 of the Policy. *Id.* at 3.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

- 5

Great American asserts that the "Declarations, main form and endorsements were all issued together, as one contract," so must be "read as a whole, including endorsements." Reply 6 (quoting *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn. 2d 703, 716-17 (2016)). According to Great American, that single contract allows for coverage for liability arising out of "Lending Services" for both individual directors and officers (under Insuring Agreements A and B) and the company (under the BFCL Insuring Agreement), but all coverage is subject to a $3 million limit. *Id.*

UniBank argues that the plain language of the Policy declarations specifies the base limits that Great American agreed to provide, and "Item 3a states that the 'Total Policy Limit' 'shall not exceed $14,000,000, 'regardless of whether such Insuring Agreement is provided as a sublimit or separate limit.'" Opp'n 5 (quoting the Policy at 2). According to UniBank, the "average purchaser of insurance would reasonably interpret the foregoing as stating that the Policy provides $7 million in limits for any D&O claim, but no more than $14 million for all claims in a policy year," and "that the Broad Form Endorsement's separate $3 million limit is in addition to the Main Form's $7 million limit for claims implicating both coverages, such that $10 million in total coverage is available for such claims." *Id.* at 5-6. UniBank also argues that the "Order of Payments" section clearly anticipates that "one or more Claims" can implicate multiple coverages and limits under the Policy. *Id.* at 8. Further, according to UniBank, the allegations against the directors and officers go beyond lending activities, alleging other "wrongful acts" that trigger the additional D&O coverage. *Id.* at 2-4.

In sum, the disputed issue is whether Great American's liability is limited to $3 million under the circumstances here. As stated above, Washington courts enforce clear contract language as it is written. *Mass. Bay*, 383 F. Supp. 3d at 1157. Here, the Policy explicitly dictates that the coverage cap of $3 million applies to all Claims "arising out of or in any way involving Lending

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

- 6

Services," expressly overriding any separate or shared limits listed elsewhere, including Item 8 of the Declarations. Policy 47. The Policy broadly defines "Lending Services" to encompass any services "involving or relating to" an extension of credit, loan servicing, or collections. Both the Bowman Lawsuit and the Administrative Action fundamentally stem from UniBank's provision of loans that financed purchases from CETA. Sec. Am. Compl. ¶¶ 8-13; *Bowman* Lawsuit Compl.; *also see* Opp'n 2-3. Although there may be other "wrongful acts" alleged, both matters directly involve and relate to Lending Services, which triggers the clear, contractually agreed-upon cap on coverage for loss arising out of Lending Services. *See* Policy 47 (describing "Lending Services" as those "involving or relating to an extension of credit").

The Policy language caps the entire Claim if it possesses any nexus to Lending Services. *See* Policy at 10, 19 (describing a single Claim as claims based upon or arising out of the same wrongful act or interrelated wrongful acts); *see also State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wn. App. 541, 543 (1975) (reasoning that "[t]he phrase 'arising out of' is unambiguous and has a broader meaning than 'caused by' or 'resulted from,'" and is ordinarily understood to mean "originating from", "having its origin in", "growing out of", or "flowing from"). Since the entire Claim undeniably involves Lending Services, UniBank cannot manufacture additional coverage limits or circumvent the contractually agreed-upon cap by recharacterizing portions of the dispute as independent, non-lending wrongful acts.

Further, UniBank's attempt to construct a $10 million limit by combining the $7 million D&O limit and the $3 million BFCL limit ignores the Policy's specific exception for claims involving "Lending Services," which creates a financial ceiling of $3 million for this lending-involved dispute.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

- 7

**B.      Requested Discovery**

The issue before the Court is one of contract interpretation of policy language that the Court finds clear and unambiguous. This being a legal issue, the Court finds that discovery will not be helpful or illuminating. Therefore, the Court will deny UniBank's request for discovery and grant Great American's motion to dismiss.

## V.    CONCLUSION

For the foregoing reasons:

1.   Defendant's Motion to Dismiss Second Amended Complaint, ECF No. 41, is GRANTED;

2.   Plaintiffs' Second Amended Complaint is DISMISSED WITH PREJUDICE;

3.   Judgment shall be entered by separate Order.

DATED this 23rd day of June 2026.

Barbara Jacobs Rothstein
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

- 8